**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI**

| | |
|---|---|
| **GALEN STEELE**<br>℅ DannLaw<br>15000 Madison Avenue<br>Lakewood, OH 44107<br><br>        Plaintiffs,<br><br>   v.<br><br>**COMMUNITY LOAN SERVICING, LLC**<br>℅ Corporation Service Company<br>3366 Riverside Drive, Suite 103<br>Upper Arlington, OH 43221<br><br>and<br><br>**NATIONSTAR MORTGAGE LLC d.b.a. RIGHTPATH SERVICING**<br>℅ Corporation Service Company<br>3366 Riverside Drive, Suite 103<br>Upper Arlington, OH 43221<br><br>and<br><br>**SELENE FINANCE, LP**<br>℅ Corporation Service Company<br>3366 Riverside Drive, Suite 103<br>Upper Arlington, OH 43221<br><br>        Defendant. | Case No.<br><br>**COMPLAINT FOR DAMAGES**<br><br>**JURY DEMAND ENDORSED HEREON** |

Plaintiff Galen Steele, through counsel, and for his *Complaint for Damages* against Defendants Community Loan Servicing, LLC, Nationstar Mortgage LLC d.b.a. RightPath Servicing and Selene Finance, LP (the "Complaint") state as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Steele ("Plaintiff" or "Steele") is the owner of the real property and improvements located thereupon located at and commonly known as 9470 Meadow Trail, Loveland, OH 45140 (the "Home").

2. Steele currently occupies and maintains the Home as his primary, principal residence and has maintained the Home as such for all times relevant to the causes of action pleaded in this Complaint.

3. On or about December 3, 2003, Steele executed a Note in the amount of $182,400.00 with non-party Macloud Financial, Inc. (the "Note") and a mortgage on the Home purportedly securing the Note (the "Mortgage") (collectively, the "Loan"). *See*, a copy of the Loan documents, attached as **Exhibit 1**.

4. Nationstar Mortgage LLC d.b.a. RightPath Servicing ("Nationstar") is a foreign limited liability company formed under the laws of the state of Delaware, licensed to do business in the state of Ohio, with its headquarters located in Coppell, Texas.

5. Nationstar was the servicer of the Loan from June 1, 2022, until December 15, 2022.

6. Community Loan Servicing, LLC ("Community") is a foreign limited liability company formed under the laws of the state of Delaware, licensed to do business in the state of Ohio, with its headquarters located in Coral Gables, Florida.

7. Community serviced the Loan at all times relevant to the causes of action pleaded in this Complaint prior to June 1, 2022.

8.     Selene Finance, LP ("Selene") is a foreign limited partnership formed under the laws of the state of Delaware, licensed to do business in the state of Ohio, with its headquarters located in Dallas, Texas.

9.     Selene is the current servicer of the Loan having obtained servicing rights to the Loan effective December 15, 2022.

10.     Selene currently services and Nationstar previously serviced the Loan on behalf of the current creditor, owner, and/or assignee of the Loan—an entity previously identified as and believed to be U.S. Bank Trust National Association, not in its individual capacity but solely as owner trustee for RCF 2 Acquisition Trust (the "Trust")—since the Trust became the assignee of the Loan on November 18, 2022.

11.     Community, Selene, and Nationstar (collectively, "Defendants") have serviced the Loan on behalf of, at the behest of, and as an agent of the Trust, or the prior creditor or assignee of the Loan, at all times relevant to this Complaint.

12.     Jurisdiction is conferred by 28 U.S.C. § 1331 as this action primarily arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA) and the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.* ("RESPA") and the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692, *et seq.*

13.     This Court has supplemental jurisdiction to hear any state law statutory and common law claims pleaded, infra, or that otherwise may arise pursuant to 28 U.S.C. § 1367.

14.     Venue is appropriate within this District pursuant to 28 U.S.C. § 1391(b) as: (1) A substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District; and, (2) the Home, the property that is the subject of the action, is located within this District.

## SUMMARY OF CLAIMS

15.     This action is filed to enforce statutory provisions of RESPA as well as regulations promulgated by the Consumer Financial Protection Bureau (CFPB) and that became effective on January 10, 2014, specifically, 12 C.F.R. § 1024.1, *et seq.* ("Regulation X").

16.     In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

17.     Specifically, on January 17, 2013, the CFPB issued the Real Estate Settlement Procedures Act Mortgage Servicing Final Rules, 78 Fed. Reg. 10695 (Regulation X) (February 14, 2013), which became effective on January 10, 2014.

18.     Steele asserts claims for relief against Nationstar and Selene for violations of the specific rules under RESPA and Regulation X, as set forth, *infra*.

19.     Nationstar and Selene are each a mortgage servicer as defined by RESPA and Regulation X. 12 U.S.C. § 2605(i)(2); 12 C.F.R. § 1024.2(b).

20.     The Loan is a "federally related mortgage loan" as defined by RESPA and Regulation X. 12 U.S.C. § 2602(1); 12 C.F.R. § 1024.2(b).

21.     The Loan is not a "reverse mortgage transaction" as defined by RESPA and Regulation X. 12 C.F.R. § 1024.31; *see* 12 C.F.R. § 1026.33(a) (Regulation Z).

22.     The Loan is secured by the Home which is Steele's principal residence. 12 C.F.R. § 1024.30(c)(2).

23.     Nationstar and Selene are each subject to the requirements of RESPA and Regulation X, and each does not qualify for the exception for "small servicers"—as defined by 12 C.F.R. § 1026.41(e)(4)—nor for the exemption for a "qualified lender"—as defined by 12 C.F.R. § 617.7000.

24.     Mortgage servicers are prohibited from failing "to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

25.     Mortgage servicers are prohibited from failing "to comply with any other obligation found by the [CFPB], by regulation, to be appropriate to carry out the consumer protection purposes of [RESPA]." 12 U.S.C. § 2605(k)(1)(E).

26.     Steele has a private right action under RESPA and Regulation X pursuant to 12 U.S.C. § 2605(f) for the claimed violations and such action provides for remedies including actual damages, statutory damages, and attorneys' fees and costs.

27.     Steele is a "consumer", as that term is defined by 15 U.S.C. § 1692a(3), and a person affected by a violation of the FDCPA, and other violations, with standing to bring this claim under 15 U.S.C. § 1692.

28.     Both Nationstar and Selene are a "debt collector" as defined by 15 U.S.C. § 1692a(6) as Nationstar and Selene began collecting on the Loan when the Loan was past due and in default and as Nationstar and Selene otherwise treated the Loan as if it were in default at the time it obtained servicing rights to the same. *See*, *infra*.

29.     The Loan is a "debt" as that term is defined by the FDCPA as the underlying debt sought to be collected by Nationstar and Selene is a residential mortgage the primary purpose of which was for personal, family, or household use, namely, to secure the financing of Steele's primary residence.

30.     Steele has a private right of action under the FDCPA pursuant to 15 U.S.C. § 1692k, for the violations claimed, *infra*, and such actions provide for remedies including actual damages, statutory damages, and attorneys' fees and costs.

31.     Steele also asserts statutory claims for violations of the Residential Mortgage Lending Act, R.C. 1322.01, *et seq.* (RMLA).

32.     Steele is a "buyer" as defined by R.C. 1322.01(I), as they are each an individual whose loan is serviced by a mortgage servicer, Nationstar, and then Selene.

33.     Defendants are each a mortgage servicer under the RMLA as each "holds the servicing rights, records mortgage payments on its books, or performs other functions to carry out the mortgage holder's obligations or rights under the mortgage agreement." R.C. 1322.01(BB).

34.     Defendants are each subject to the requirements of the RMLA and do not qualify for the exemptions listed in R.C. 1322.04.

## FACTUAL BACKGROUND

35.     Steele allegedly became delinquent on his obligations pursuant to the Loan.

36.     Community approved Steele for a trial period payment plan (the "TPP") wherein Steele was required to remit monthly payments of $1,243.11, as a precondition to receiving a permanent modification.

37.     Steele complied with and satisfied all conditions of the TPP and, on or about April 25, 2022, Community approved Steele for a permanent loan modification effective June 1, 2022 (the "Modification"). *See*, a copy of the Modification, attached as **Exhibit 2**.

38.     Community, however, failed to provide a copy of the Modification to Steele for execution, and Steele did not receive a copy of the Modification, prior to servicing rights transferring to Nationstar, effective June 1, 2022.

39.     Steele continued to remit his monthly payments of $1,243.11 in furtherance of the TPP and in anticipation of the Modification.

40.     Nationstar eventually sent correspondence to Steele dated September 15, 2022, stating that it "must withdraw the [Modification] offered because we did not receive the properly executed copies as required. This means that your loan terms will not be modified, and your loan may be in default." *See*, a copy of the Denial, attached as **Exhibit 3**.

41.     At the time of the Denial, Steele had not yet ever received a copy of the Modification to execute and return.

42.     Steele spoke with a representative of Nationstar on or about November 10, 2022.

43.     During this call, Nationstar advised that it was not in receipt of the executed Modification and Nationstar sent a copy of the Modification to Steele via a secure link transmitted via email on November 10, 2022.

44.     During this call, Nationstar indicated that had no record of Steele previously receiving the Modification and that once it had copies of the executed Modification, that it would review the Modification and the Denial to look into implementing the Modification and overturning the Denial.

45.     Following this call, Steele was reasonably under the impression that by executing and returning the Modification, that this issue would be resolved.

46.     Upon receipt of the Modification documents for the first time through Nationstar's secure link, Steele promptly executed the Modification on November 15, 2022 in the presence of a notary public and returned the documents to Nationstar. *See*, Exhibit 2.

47.     Shortly after sending in the executed Modification documents, Steele received notice that the servicing of his Loan was once again transferring, this time to Selene, effective December 15, 2022.

48.     At or around the time of the notice of the servicing transfer, Nationstar started to reject Steele's payments in the amount of $1,243.11 beginning with an attempted payment in and for the month of December 2022.

49.     Nationstar took no further action and failed to communicate any further with Steele regarding the Modification and his request that Nationstar overturn the Denial and honor the same prior to servicing rights transferring to Selene.

50.     Steele began to communicate with Selene in continued attempts to have the Modification honored.

51.     After a series of frustrating phone calls with various Selene representatives, Steele was finally able to discuss the issues surrounding the Modification with an apparent supervisor at Selene, an individual identified as Gina McBroom, on or about January 28, 2023.

52.     Ms. McBroom claimed that Selene did not receive the Modification from Nationstar and otherwise claimed that the records received from Nationstar were in disorder.

53.     Ms. McBroom further informed Steele that Selene would honor the Modification if Steele could provide a copy of the same.

54.     Ms. McBroom confirmed the foregoing in writing via email communication stating that the following would be needed to honor the Modification:

- Need missing 3 payments to honor the [Modification],
- Previously signed notarized [Modification Documents] from previous servicer
- Then we will also need to resend the [documents] in our Lender Name to be signed and notarized and returned with the 3 payments

*See*, a copy of this email thread, attached as **<u>Exhibit 4</u>**.

55.     Steele, in compliance with Ms. McBroom's instructions, forwarded a copy of the signed and notarized Modification to Ms. McBroom on February 7, 2023, which she acknowledged receipt of that same day. *See*, <u>Exhibit 4</u>.

56.     Per the prior communications with Ms. McBroom, Steele awaited further communications from Ms. McBroom as to the Modification or a copy of the Modification in Selene's name along with instructions to submit the three (3) additional payments due thereunder.

57.     Steele, however, received no such communication.

58.     Steele attempted to reach Ms. McBroom on at least nine (9) separate occasions in February 2023 in regard to the foregoing via telephone—leaving voicemails each time—as well as through email to no avail.

59.     On or about February 10, 2023, Selene sent correspondence to Steele (the "Selene Denial") stating that:

> [Selene] conducted an extensive review of your account for loss mitigation alternatives. We regret to inform you that we are unable to approve your request at this time for the following reason(s): Borrower failed to return signed Modification Agreement.

*See*, a copy of the Selene Denial, attached as **<u>Exhibit 5</u>**.

60.     Steele finally received a call from a Selene representative on or about March 1, 2023, and was transferred to Ms. McBroom who initially claimed to have not received any of Steele's messages, but eventually indicated that she was "not permitted" to email or call him back.

61.     As Selene, and all prior servicers, had not resolved their errors in relation to the handling of the Modification, Steele retained counsel to assist in resolving the errors.

62.     On or about April 4, 2023, Steele, through counsel, sent a notice of error pursuant to 12 C.F.R. § 1024.35 to Nationstar (the "Nationstar NOE") at the address designated by

Nationstar for the receipt of requests for information and notices of error pursuant to 12 C.F.R. §§ 1024.36(b) and 1024.35(c), respectively (the "Nationstar Designated Address"). *See*, a copy of the Nationstar NOE and tracking information evidencing delivery of the same, attached as **Exhibit 6**.

63.     Through the Nationstar NOE, Steele alleged that Nationstar committed errors in failing to Loan by failing to properly handle the Modification and in otherwise mishandling the loss mitigation process for the Loan. *See*, Exhibit 6.

64.     On or about April 4, 2023, Steele, through counsel, sent a notice of error pursuant to 12 C.F.R. § 1024.35 to Selene (the "Selene NOE") at the address designated by Selene for the receipt of requests for information and notices of error pursuant to 12 C.F.R. §§ 1024.36(b) and 1024.35(c), respectively (the "Selene Designated Address"). *See*, a copy of the Selene NOE and tracking information evidencing delivery of the same, attached as **Exhibit 7**.

65.     Through the Selene NOE, Steele alleged that Selene committed errors in failing to Loan by failing to properly handle the Modification and in otherwise mishandling the loss mitigation process for the Loan. *See*, Exhibit 7.

66.     Nationstar sent correspondence dated April 21, 2023 in response to the Nationstar NOE (the "Nationstar Response"). *See*, a copy of the Nationstar Response without enclosures, attached as **Exhibit 8**.

67.     Through the Nationstar Response, Nationstar stated:

"[W]e were willing to honor the [M]odification; however we did not receive the executed modification until November 2022; by that time, the customer had exceeded the allotted timeframe to return the modification documents. Enclosed for your review is a copy of the Evaluation Letter dated September 15, 2022.

Please be informed that on November 10, 2022, [Steele] spoke with a [Nationstar] representative. During the call, [Steele] was advised that in order to escalate the review of the previous modification offer again, we had to have the executed agreement as we still were not in receipt of the properly executed documents. The representative did not inform [Steele] that the modification denial was going to be

overturned once the documents were received but that we would consider reviewing the request again. In the representative's continuing efforts to assist, the agreements were emailed to [Steele]. However, as stated above, [Steele] ultimately surpassed the allowable timeframe to return the documents.

*See*, Exhibit 8.

68.     Through the Response, Nationstar wholly failed to address the fact that the only reason Steele had not previously executed the documents prior to November 2022 was due to the fact that a copy had never been supplied prior to November 2022 for him to execute, despite Steele having informed Nationstar of this on numerous prior occasions.

69.     Selene sent correspondence dated June 14, 2023 in response to the Selene NOE (the "Selene Response"). *See*, a copy of the Selene Response, without enclosures, attached as **Exhibit 9**.

70.     Through the Selene Response, Selene asserted that it had not committed any errors in relation to the Loan and stated as follows:

> Regarding the modification, according to our records, the mortgagor successfully paid the trial payments in accordance with the Trial Modification Plan and Mr. Cooper sent the mortgagor a Loan Adjustment Agreement with June 1, 2022, as the effective date. A copy of the final loan modification is enclosed for your review.
>
> After the servicing transfer occurred, the mortgagor was either advised of the status of the account, the missing executed Loan Adjustment Agreement, and/or the post modification payments that were due on the account on several occasions. Selene attempted to obtain the executed Loan Adjustment Agreement and the post modification payments that were due from the mortgagor however, our attempts were unsuccessful.
>
> According to our notes, we spoke to the mortgagor on the following dates: December 23, 2022, December 23, 2022 (2nd Time), January 4, 2023, January 11, 2023, January 19, 2023, and January 28, 2023. Enclosed is a copy of the comments/notes for your review.
>
> Consequently, Selene terminated the Loss Mitigation case on February 9, 2023, as the mortgagor failed to the return the executed Loan Adjustment Agreement offered to them and/or the post modification payments that were due on the account. Notification of the aforementioned was sent to the mortgagor by way of the enclosed letter dated February 10, 2023.
>
> As of today, the Loan Modification case is no longer active, and the mortgagor must reapply if he/she is interested in Loss Mitigation options.

*See*, Exhibit 9.

71.     Again, as with Nationstar, Selene wholly failed to address the fact that the only reason Steele had not previously executed the documents prior to November 2022 was due to the fact that a copy had never been supplied prior to November 2022 for him to execute, despite Steele having informed Selene of this on numerous prior occasions. *See*, Exhibit 9.

72.     Moreover, Selene also appears to indicate that the first time the Modification was sent to Steele was through Nationstar as it specifically states: [Nationstar] sent the mortgagor a copy of the [Modification] with June 1, 2022, as the effective date." *See*, Exhibit 9.

73.     Further, Selene only referenced communications that occurred through January 28, 2023, and wholly failed to mention the lack of communication that ensued following Ms. McBroom's telephone conversation and email, as well as Steele's compliance with the requests she issued to him.

74.     To date, the Loan remains in a default status despite Steele's good faith compliance with the TPP and the Modification, and having promptly returned the Modification once a copy was actually sent to him for execution.

**IMPACT UPON AND DAMAGES SUFFERED BY THE SINGLEYS**

75.     Defendants' mishandling of the Modification has caused Steele to incur attorneys' fees and costs in, unsuccessful, attempts to correct such errors relating to the Loan.

76.     Defendants' improper actions caused Steele to suffer from actual and proximate damages including, but not limited to:

a.  Improper fees and charges imposed on the Loan due to the unnecessarily continued delinquency on the Loan, the collection of such fees, including any late fees and other default servicing related fees for which Steele is personally obligated or which otherwise negatively impacts any equity in the Home to which he is entitled;

b. Legal fees, costs, and expenses to submit requests for information and notices of error to Selene and Nationstar in a good faith attempt to obtain information to ascertain the nature of the problems at hand and to otherwise amicably resolve this matter, or to have Selene and/or Nationstar mitigate the harm caused to Steele to which he did not receive a proper or adequate responses;

c. Significant delay in the loss mitigation process and rehabilitation of Steele's credit; and,

d. Severe emotional distress driven by Defendants' failure to properly handle the Modification and by the justified fear that such blatant indifference would result in the filing of a foreclosure action, which has resulted in frustration, loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress.

## PATTERN AND PRACTICE OF NATIONSTAR'S VIOLATIONS OF RESPA AND REGULATION X

77.     Nationstar's actions are part of a pattern and practice of behavior in violation of Steele's rights and in abdication and contravention of Nationstar's obligations under the mortgage servicing regulations set forth in Regulation X of RESPA.

78.     Nationstar has numerous consumer complaints lodged against it nationally on the CFPB's consumer complaint database. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database which can be accessed at the following link: http://www.consumerfinance.gov/data-research/consumer-complaints.

79.     Steele has reviewed the CFPB's consumer complaint database and has identified narratives asserting that Nationstar engaged in similar conduct against other borrowers. In particular, Steele has reviewed the eight (8) consumer complaints attached hereto and identified as **Group Exhibit 10**. The date, details, and a narrative disclosed by the consumer is set forth in each

complaint. The complaints show conduct which demonstrates that Nationstar has engaged in a pattern or practice of violating RESPA with respect to other borrowers.

## PATTERN AND PRACTICE OF SELENE'S
## VIOLATIONS OF RESPA AND REGULATION X

80.     Selene's actions are part of a pattern and practice of behavior in violation of Steele's rights and in abdication and contravention of Selene's obligations under the mortgage servicing regulations set forth in Regulation X of RESPA.

81.     Selene has numerous consumer complaints lodged against it nationally on the CFPB's consumer complaint database. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database which can be accessed at the following link: http://www.consumerfinance.gov/data-research/consumer-complaints.

82.     Steele has reviewed the CFPB's consumer complaint database and has identified narratives asserting that Selene engaged in similar conduct against other borrowers. In particular, Steele has reviewed the seven (7) consumer complaints attached hereto and identified as **Group Exhibit 11**. The date, details, and a narrative disclosed by the consumer is set forth in each complaint. The complaints show conduct which demonstrates that Selene has engaged in a pattern or practice of violating RESPA with respect to other borrowers.

## COUNT ONE: AGAINST NATIONSTAR AND SELENE
## VIOLATIONS OF 12 C.F.R. § 1024.35(e) AND 12 U.S.C. §§ 2605(e) AND (k)

### (Failure to properly respond to the Nationstar NOE and the Selene NOE)

83.     Steele restates and incorporates all of the statements and allegations contained in paragraphs 1 through 82 in their entirety, as if fully rewritten herein.

84.     "A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information

that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." 12 C.F.R. § 1024.35(a).

85.    Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower." Supplement I to Part 1024.

86.    A servicer must respond to a notice of error by either:

(A)    Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or

(B)    Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.35(e)(1)(i); *see also* 12 U.S.C. § 2605(e)(2)(B).

87.    A servicer must respond to a notice of error in compliance with 12 C.F.R. § 1024.35(e)(1):

(A)    Not later than seven days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error for errors asserted under paragraph (b)(6) of this section.

(B)    Prior to the date of a foreclosure sale or within 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error, whichever is earlier, for errors asserted under paragraphs (b)(9) and (10) of this section.

(C)    For all other asserted errors, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the applicable notice of error.

12 C.F.R. § 1024.35(e)(3)(i); *see also* 12 U.S.C. § 2605(e)(2).

88.    "A servicer of a federally related mortgage shall not...fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances

for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

89.     A servicer of a federally related mortgage shall not "fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k)(1)(E).

90.     The Nationstar NOE and the Selene NOE each constitute a notice of error as defined by 12 C.F.R. § 1024.35(a) as each is a "written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." *See*, Exhibits 6 and 7.

### (The Nationstar NOE)

91.     Nationstar received the Nationstar NOE at the Nationstar Designated Address on or before April 12, 2023. *See*, Exhibit 6.

92.     In relation to the Nationstar NOE, Nationstar did not fulfill its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(A) through the Nationstar Response as it did not admit that the errors occurred as alleged in the Nationstar NOE nor take any corrective action. *See*, Exhibits 6 and 8.

93.     In relation to the Nationstar NOE, Nationstar did not fulfill its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(B) through the Nationstar Response as it is clear that Nationstar did not perform a reasonable investigation into the errors alleged through the Nationstar NOE as Nationstar wholly failed to address the fact that the only reason Steele had not previously executed the documents prior to November 2022 was due to the fact that a copy had never been supplied prior to November 2022 for him to execute, despite Steele having informed Nationstar of this on numerous prior occasions. *See*, Exhibits 6 and 8.

**(The Selene NOE)**

94.     Selene received the Selene NOE at the Selene Designated Address on or before April 10, 2023. *See*, Exhibit 7.

95.     In relation to the Selene NOE, Selene did not fulfill its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(A) through the Selene Response as it did not admit that the errors occurred as alleged in the Selene NOE nor take any corrective action. *See*, Exhibits 7 and 9.

96.     In relation to the Selene NOE, Selene did not fulfill its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(B) through the Selene Response as it is clear that Selene did not perform a reasonable investigation into the errors alleged through the Selene NOE as Selene wholly failed to address the fact that the only reason Steele had not previously executed the documents prior to November 2022 was due to the fact that a copy had never been supplied prior to November 2022 for him to execute, despite Steele having informed Selene of this on numerous prior occasions. *See*, Exhibits 7 and 9.

97.     Moreover, Selene also appears to indicate that the first time the Modification was sent to Steele was through Nationstar as it specifically states: [Nationstar] sent the mortgagor a copy of the [Modification] with June 1, 2022, as the effective date." *See*, Exhibit 9.

98.     Further, Selene only referenced communications that occurred through January 28, 2023, and wholly failed to mention the lack of communication that ensued following Ms. McBroom's telephone conversation and email, as well as Steele's compliance with the requests she issued to him.

**(Impact and Damages)**

99.     Nationstar's and Selene's failures to timely and properly respond to the Nationstar NOE and the Selene NOE, respectively, by failing to correct its errors or to otherwise perform a

reasonable investigation into and otherwise properly respond to the errors alleged through the Nationstar NOE and the Selene NOE constitute violations of 12 C.F.R. § 1024.35(e) and 12 U.S.C. § 2605(k) and caused Steele to suffer actual damages, as discussed, *supra*. *See Renfroe v. Nationstar Mortg.*, LLC, 822 F.3d 1241, 1246 (11th Cir. 2016) ("This statutory mechanism makes past errors current by requiring servicers to fix errors they find upon reasonable investigation, including by issuing refunds as necessary.").

100. Further, Nationstar's and Selene's failure to comply with 12 C.F.R. § 1024.35(e) and 12 U.S.C. § 2605(k) caused Steele's attorneys' fees and costs associated with the preparation of the Nationstar NOE and the Selene NOE to metamorphose into damages. *See Marais v. Chase Home Fin., LLC* (Marais II), 24 F. Supp. 3d 712, 726-728 (S.D. Ohio 2014); *see Marais v. Chase Home Fin. LLC* (Marais I), 736 F.3d 711, 721 (6th Cir. 2013); *Pope v. Carrington Mortg. Servs., LLC*, No. 1:18-CV-240, 2018 U.S. Dist. LEXIS 98413, at *11 (N.D. Ohio June 12, 2018) ("But other courts have held, and the Sixth Circuit has suggested, that a plaintiff can establish actual RESPA damages when the plaintiff incurred expenses submitting paperwork to a lender, but the lender 'ignored its statutory duties to adequately respond.'").

101. Nationstar's and Selene's actions are part of a pattern and practice of behavior in conscious disregard for Steele's rights and in abdication of their obligations under RESPA and Regulation X.

102. As a result of Nationstar's and Selene's actions, Nationstar and Selene are each liable to Steele for actual damages and statutory damages, as further described, *supra*. 12 U.S.C. § 2605(f)(1).

103. Additionally, Steele requests reasonable attorneys' fees and costs incurred in filing and maintaining this action. 12 U.S.C. § 2605(f)(3).

## COUNT TWO: AGAINST NATIONSTAR AND SELENE
## VIOLATIONS OF THE FDCPA, 15 U.S.C. §§ 1692, *et seq.*

104.    Steele restates and incorporates all of the statements and allegations contained in paragraphs 1 through 82 in their entirety, as if fully rewritten herein.

105.    Steele is a "consumer" as he is a natural person who is obligated or allegedly obligated to pay the Loan. 15 U.S.C. § 1692a(3).

106.    The Loan is a "debt" as it is an obligation or alleged obligation of Steele to pay money arising out of a transaction primarily for personal, family, or household purposes—the financing of the Home. 15 U.S.C. § 1692a(5).

107.    Nationstar and Selene are each a "debt collector" because it regularly collects or attempts to collect on the Loan and other loans owed to creditors, such as the Trust. 15 U.S.C. § 1692a(6).

108.    The Loan was in contractual default at the time Nationstar and Selene acquired the servicing rights to the same. *See*, 15 U.S.C. § 1692a(6)(F)(iii). *See*, Exhibit 1.

109.    Nationstar and Selene, through, *inter alia*, mortgage statements and correspondence treated the Loan as if it was in default.

110.    The FDCPA prohibits false, deceptive, or misleading representations in connection with the collection of any debt. 15 U.S.C. § 1692e. The FDCPA provides examples of conduct that violate the provision, such as prohibiting the use of false representations or deceptive means to collect or attempt to collect any debt (15 U.S.C. § 1692e(10)).

111.    Nationstar and Selene each violated 15 U.S.C. §§ 1692e and 1692e(10), by failing to properly handle the Modification and by indicating to Steele that the Modification could be honored despite Nationstar and Selene later claiming that it was not timely accepted, despite being

aware at all times that Steele indicated that he never received a copy of the Modification prior to November 2022.

112.    The FDCPA prohibits the use of unfair or unconscionable means to collect or attempt to collect any debt. 15 U.S.C. § 1692f.

113.    Nationstar and Selene violated 15 U.S.C. § 1692f through its actions in failing to properly handle the Modification and by indicating to Steele that the Modification could be honored despite Nationstar and Selene later claiming that it was not timely accepted, despite being aware at all times that Steele indicated that he never received a copy of the Modification prior to November 2022.

114.    Nationstar's and Selene's actions have caused Steele to suffer actual damages, further described, *supra*, including but not limited to requiring Pretino to incur attorneys' fees and costs related to the preparation and mailing of the Nationstar NOE and the Selene NOE to attempt to have Nationstar and Selene correct its erroneous conduct.

115.    As a result of Nationstar's and Selene's conduct, Steele suffered extreme emotional distress driven by the fear that Nationstar's and Selene's actions would lead to an unwarranted foreclosure of his Home despite his payment of the amounts due and owing under the Modification, his willingness and ability to continue to remit such payments, and of his prompt execution of the Modification once finally received, which resulted in frustration, loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress.

116.    As a result of Nationstar's and Selene's actions, Nationstar and Selene are each liable to Steele for actual damages and statutory damages. 15 U.S.C. § 1692k(a)(1).

117.    Additionally, Steele requests reasonable attorneys' fees and costs incurred in connection with this action. 15 U.S.C. § 1692k(a)(3).

**COUNT THREE: AGAINST ALL DEFENDANTS**
**VIOLATIONS OF THE RMLA, R.C. 1322.01,** *et seq.*

118.    Steele restates and incorporates all of the statements and allegations contained in paragraphs 1 through 116 in their entirety, as if fully rewritten herein.

119.    "No person ... shall act as a … mortgage servicer … without first having obtained a certificate of registration from the superintendent of financial institutions for the principal office and every branch office to be maintained by the person for the transaction of business as a … mortgage servicer ... in this state." R.C. 1322.07(A).

120.    Defendants, each as a mortgage servicer, are each required to be registered with the Ohio Department of Commerce, Division of Financial Institutions under R.C. 1322.

121.    Community is a registrant under R.C. 1322, as the Ohio Department of Commerce, Division of Financial Institutions has issued it certificates of registration, *inter alia*, License No. RM.804220.000. R.C. 1322.01(HH).

122.    Nationstar is a registrant under R.C. 1322, as the Ohio Department of Commerce, Division of Financial Institutions has issued it certificates of registration, *inter alia*, License No. RM.850005.000. R.C. 1322.01(HH).

123.    Selene is a registrant under R.C. 1322, as the Ohio Department of Commerce, Division of Financial Institutions has issued it certificates of registration, *inter alia*, License No. RM.501430.000. R.C. 1322.01(HH).

124.    The Plaintiff is a buyer, as his Loan is serviced by Selene, a mortgage servicer, and was previously serviced by Community and Nationstar, each a mortgage servicer. R.C. 1322.01(I).

125.    A registrant, licensee, or person required to be registered or licensed under R.C. 1322, *et seq.* cannot "[e]ngage in conduct that constitutes improper, fraudulent, or dishonest dealings." R.C. 1322.40(C).

126.     Community's conduct in, *inter alia*, failing to properly handle the Modification and failing to provide a copy of the Modification for execution to Steele and in failing to act with reasonable care and diligence to communicate with Steele regarding his alleged failure to execute and return the Modification, constitute violations of R.C. 1322.40(C).

127.     Nationstar's and Selene's conduct in, *inter alia*, failing to properly handle the Modification and by indicating to Steele that the Modification could be honored despite Nationstar and Selene later claiming that it was not timely accepted, despite being aware at all times that Steele indicated that he never received a copy of the Modification prior to November 2022, as well as failing to properly respond to the Nationstar NOE and the Selene NOE, respectively, constitute violations of R.C. 1322.40(C).

128.     Defendants' conduct caused Steele to suffer actual damages, as further described, *supra*.

129.     As a result of Defendants' conduct, Defendants are each liable to Steele for actual damages, as further described, *supra*, as well as reasonable attorneys' fees and costs incurred in connection with this action and punitive damages. R.C. 1322.52.

130.     A registrant, licensee, or person required to be registered or licensed under R.C. 1322, *et seq.*, is required to comply with all duties imposed by other statutes or common law and:

   (3)   Act with reasonable skill, care, and diligence; [and]
   (4)   Act in good faith and with fair dealing in any transaction, practice, or course of business in connection with the brokering or originating of any residential mortgage loan[.]

R.C. 1322.45(A).

131.     A registrant, licensee, or person required to be registered or licensed under R.C. 1322 cannot waive or modify its duties under R.C. 1322.45(A). R.C. 1322.45(C).

132.    Community's conduct in, *inter alia*, failing to properly handle the Modification and failing to provide a copy of the Modification for execution to Steele and in failing to act with reasonable care and diligence to communicate with Steele regarding his alleged failure to execute and return the Modification, constitutes violations of R.C. 1322.45(A)(3)-(4).

133.    Nationstar's and Selene's conduct in, *inter alia*, failing to properly handle the Modification and by indicating to Steele that the Modification could be honored despite Nationstar and Selene later claiming that it was not timely accepted, despite being aware at all times that Steele indicated that he never received a copy of the Modification prior to November 2022, as well as failing to properly respond to the Nationstar NOE and the Selene NOE, respectively, constitutes violations of R.C. 1322.45(A)(3)-(4).

134.    As a result of Defendants' conduct, Defendants are liable to Steele for actual damages, as further described, *supra*, as well as reasonable attorneys' fees and costs incurred in connection with this action and punitive damages. R.C. 1322.45(D).

**WHEREFORE**, Plaintiff Galen Steele prays that this Court grant judgment against Defendants Nationstar Mortgage LLC d.b.a. RightPath Servicing and Selene Finance, LP and award him the following:

A.    Actual damages from Defendants Nationstar Mortgage LLC d.b.a. RightPath Servicing and Selene Finance, LP in an amount to be determined at trial for the allegations contained in Counts One through Three;

B.    An award of statutory damages of Two Thousand Dollars ($2,000.00) each from Defendants Nationstar Mortgage LLC d.b.a. RightPath Servicing and Selene Finance, LP for their respective violations of RESPA contained in Count One;

    C.      An award of statutory damages of One Thousand Dollars ($1,000.00) each from Defendants Nationstar Mortgage LLC d.b.a. RightPath Servicing and Selene Finance, LP for their respective violations of the FDCPA contained in Count Two;

    D.      For punitive damages against Defendants Nationstar Mortgage LLC d.b.a. RightPath Servicing and Selene Finance, LP as to Count Three;

    E.      For attorney's fees and costs as to Counts One through Three; and,

    F.      For such other relief which this Court may deem appropriate.

**WHEREFORE**, Plaintiff Galen Steele prays that this Court grant judgment against Defendant Community Loan Servicing, LLC:

    A.      Actual damages from Defendant Community Loan Servicing, LLC in an amount to be determined at trial for the allegations contained in Count Three;

    B.      For punitive damages against Defendant Community Loan Servicing, LLC as to Count Three;

    C.      For attorney's fees and costs as to Counts Three; and,

    D.      For such other relief which this Court may deem appropriate.

/s/ *Marc E. Dann*
Marc E. Dann (0039425)
Daniel M. Solar (0085632)
Michael A. Smith, Jr. (0097147)
Brian D. Flick (0081605)
**Dann Law**
15000 Madison Ave.
Lakewood, OH 44107
Telephone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com
*Counsel for Plaintiff Galen Steele*

## **JURY DEMAND**

Plaintiff Galen Steele hereby respectfully demands a trial by jury on all such claims that may be so tried.

/s/ *Marc E. Dann*
Marc E. Dann (0039425)
Daniel M. Solar (0085632)
Michael A. Smith, Jr. (0097147)
Brian D. Flick (0081605)
**Dann Law**
*Counsel for Plaintiff Galen Steele*
