**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**GALEN STEELE,**

    **Plaintiff,**

    v.

**COMMUNITY LOAN SERVICING, LLC,** *et al.***,**

    **Defendants.**

Case No. 1:23-cv-497
JUDGE DOUGLAS R. COLE

**OPINION AND ORDER**

Plaintiff Galen Steele sued three loan servicers who serviced his residential home loan and mortgage. Through this action, he seeks to vindicate his claimed right to a not-yet-executed-but-allegedly-promised modification of his home loan, and to recover damages for the harm he has incurred while pursuing that allegedly-promised-but-subsequently-denied modification. As relevant to the decision here, Steele claims Defendant Community Loan Servicing, LLC (Community)—the first of the three servicers Steele names—violated two provisions of the Ohio Residential Mortgage Lending Act (RMLA) when it failed to deliver the proposed modification that it had promised for Steele's execution. (Compl., Doc. 1, #21–23). Community now moves to dismiss Count III of the Complaint, which includes both violations in a single count, under Federal Rule of Civil Procedure 12(b)(6). (Doc. 20).

As further explained below, the Court concludes that, although the Complaint is short on detail in its allegations against Community, it nonetheless plausibly states a claim for relief under both provisions of the RMLA (if barely) against that

Defendant. Accordingly, the Court **DENIES** Community Loan Servicing, LLC's Motion to Dismiss (Doc. 20).

## BACKGROUND[1]

Steele owns residential property in Loveland, Ohio. (Doc. 1 ¶¶ 1–2, #2). As most homeowners do, Steele financed his ownership with a home loan that included a mortgage. (*Id.* ¶ 3, #2). Although the Complaint does not detail the complete history of the mortgage note and Steele's home loan, for the purposes of this suit, Community was the first of the relevant loan servicers. (*Id.* ¶ 7, #2). Community serviced Steele's loan until June 1, 2022, when the loan servicing obligations transferred to Defendant Nationstar Mortgage LLC (Nationstar). (*Id.* ¶¶ 5, 7, #2).

As sometimes happens, Steele found himself in delinquency while the loan was still under Community's control. (*Id.* ¶¶ 35–36, #6). To remedy the delinquency, Community allegedly approved Steele to enter a probationary period during which time he would "remit monthly payments of $1,243.11" with the promise that if the temporary plan were implemented successfully, he would "receiv[e] a permanent modification" of his loan agreement. (*Id.* ¶ 36, #6). Steele alleges that he "complied with and satisfied all conditions" of the probationary period such that Community approved the loan modification "on or about April 25, 2022" with an effective date of June 1, 2022. (*Id.* ¶ 37, #6). But the written instrument providing for the promised

---

[1] As this matter comes before the Court on a motion to dismiss, the Court must accept the well-pleaded allegations in the Complaint as true. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). But in reporting the background here based on those allegations, the Court reminds the reader that they are just that—allegations.

modification was allegedly not delivered before Community transferred the loan servicing responsibilities to its successor, Nationstar, on June 1, 2022. (*Id.* ¶ 38, #6).

Still, Steele "continued to remit his monthly payments of $1,243.11" for several months after Nationstar became the loan servicer—seemingly without anyone raising any issues. (*Id.* ¶¶ 39, 48, #7–8). But that changed when Nationstar sent a notice to Steele notifying him of its intention to withdraw the loan modification on September 15, 2022. (*Id.* ¶ 40, #7). Steele alleges that both Nationstar and the subsequent loan servicer Defendant Selene Finance, L.P. (Selene), rejected his loan payments, treated his loan as in default, and refused to honor the loan modification that Community had promised. (*Id.* ¶¶ 40, 48–49, 54, 59, 67, 70, 74, #7–12).

Because Steele's loan is still in default despite his alleged "good faith compliance" with Defendants' requests, Steele brought suit on August 7, 2023. He raises a variety of state and federal claims against Defendants. But the scope of Steele's dispute with Community is narrow—limited only to the actions Community took before June 1, 2022, the date on which it transferred servicing responsibilities to Nationstar. Steele claims that by failing either "to provide a copy of the Modification for execution" or "to communicate with Steele regarding his alleged failure to execute" the modification, Community is responsible for two violations of the RMLA: (1) engaging in "improper, fraudulent, or dishonest" conduct in violation of Ohio Revised Code § 1322.40(C), and (2) failing to exercise reasonable care or to act in good faith in violation of Ohio Revised Code § 1322.45(A)(3)–(4). (*Id.* ¶¶ 126, 132, #22–23). Presumably, although not expressly set out in the Complaint, Steele

3

believes that Community's claimed violations of the RMLA resulted in his troubles with Nationstar and Selene, and that the reason the latter two are treating him as in default on his home loan is attributable to Community's alleged failures. (*Id.*¶ 75–76, #12–13). Put differently, Steele appears to claim that, had Community delivered the written instrument containing the loan modification, he would currently be operating under the modification, and thus would not be in default, and also would not have expended time and money trying to persuade Nationstar and Selene to honor the modification.

After Defendants were served, Nationstar and Selene answered. (Docs. 15, 16). Community—and Community alone—instead moved to dismiss. It contends that Steele has failed to plead any viable RMLA claim against it (the only claim of misconduct Steele presses against Community). (Doc. 20). More specifically, Community argues that the Complaint merely alleges conclusory allegations that Community violated the RMLA and fails to include well-pleaded factual allegations that would permit the Court reasonably to infer that Community may be liable to Steele. (*Id.* at #704). Steele responded (Doc. 21), and Community replied (Doc. 22).

The matter is now ripe for the Court's review.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a "complaint must present sufficient facts to 'state a claim to relief that is plausible on its face.'" *Robbins v. New Cingular Wireless PCS, LLC*, 854 F.3d 315, 319 (6th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has

4

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In assessing plausibility, the Court "construe[s] the complaint in the light most favorable to the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (cleaned up).

## LAW AND ANALYSIS

As a reminder, Steele alleges Community violated two provisions of the RMLA—Ohio Revised Code § 1322.40(C) and Ohio Revised Code § 1322.45(A)(3)–(4). Given there is only one count in the Complaint related to these RMLA violations, one would initially presume that Steele raised one claim against Community based on two alternative theories of liability. Community interpreted Steele's Complaint that way. (Doc. 20, #704). And Steele himself occasionally alternates between treating the alleged RMLA violations as raising one or two claims. (*Compare* Doc. 21, #743 ("Plaintiff … properly, thoroughly, and sufficiently pleaded a claim against CLS."), *with id.* at #744 ("Plaintiff has sufficiently pleaded viable claims under the RMLA against CLS.")). But whether the Complaint properly raises one claim based on two theories of liability, or instead two claims, could affect how the Court disposes of Community's motion. *See Taylor v. J. C. Penney Co.*, No. 16-cv-11797, 2017 WL 1908786, at *3 n.1 (E.D. Mich. May 10, 2017) (highlighting a circuit split over whether a "district court can[] partially dismiss one of th[e] theories [of liability for a single claim] at the motion to dismiss stage of litigation").

5

To resolve whether Steele is asserting one claim or two against Community, the Court first notes that the Federal Rules of Civil Procedure empower—and require—the Court to "construe[] [pleadings] so as to do justice." Fed. R. Civ. P. 8(e). Doing justice here requires construing the Complaint to be raising *two* claims, rather than one claim, under the RMLA against Community. This is because the RMLA provides distinct causes of actions to parties injured by violations of § 1322.40, on the one hand, and § 1322.45, on the other. *Compare* Ohio Rev. Code § 1322.45(D)(1) ("A buyer injured by a failure to comply with this section may bring an action for recovery of damages."), *with id.* § 1322.52(A)(1) ("A buyer injured by a violation of section 1322.07, 1322.40, or 1322.46 of the Revised Code may bring an action for recovery of damages."). Further confirming this, while the RMLA prevents a party from recovering under both § 1322.40 and § 1322.45 for the same conduct, the provisions detailing that the remedies are mutually exclusive both expressly state that each is vindicated via a distinct cause of action. *Id.* § 1322.45(E) ("A buyer injured by a failure to comply with this section is precluded from recovering any damages … if the buyer has also recovered any damages in a cause of action initiated under section 1322.52 of the Revised Code and the recovery … is based on the same acts or circumstances as the basis for recovery of damages in section 1322.52 of the Revised Code."); *id.* § 1322.52(G) ("A buyer injured by a violation of any of the sections specified in division (A)(1) of this section [including § 1322.40] is precluded from recovering any damages, plus reasonable attorney's fees and costs, if the buyer has also recovered any damages in a cause of action initiated under section 1322.45 of the Revised Code

6

and the recovery … is based on the same acts or circumstances as the basis for recovery of damages in section 1322.45 of the Revised Code."). As the RMLA expressly provides two separate causes of action for debtors to sue loan servicers who allegedly violate the two different provisions at issue here, the proper way to construe Count III of Steele's Complaint is to find that it raises *two* distinct, although admittedly related, state-law claims against Community—not just one as originally styled.

The Court addresses each claim in turn.

### A. Ohio Revised Code § 1322.45(A)(3)–(4)

Start with Ohio Revised Code § 1322.45(A).[2] Under that provision, loan servicers must "act with reasonable skill, care, and diligence" and "in good faith and with fair dealing" when engaging in transactions related to home loans. Ohio Rev. Code § 1322.45(A)(3)–(4). As explained below, the Court finds that the Complaint contains sufficient allegations to state a claim for relief under § 1322.45(A), as Steele has plausibly alleged that Community did not exercise reasonable care and was not diligent.[3]

---

[2] The Court notes that there appears to be only one case that has actually applied the terms of Ohio Revised Code § 1322.45(A) or its predecessor § 1322.081(A). *Ruckman v. PHH Mortg. Corp.*, No. 5:21-cv-923, 2022 WL 16575453, at *20 (holding that the failure "to safeguard and [to] account for money tendered" by the debtor violated the mortgagee's duty of reasonable care and good faith). Still, the Court finds that the statute is readily amenable to interpretation despite this dearth of authority given the provisions import standards easily recognizable at common law. *See infra* note 3; *see generally Dakota Girls, LLC v. Philadelphia Indem. Ins. Co.*, 17 F.4th 645, 649 (6th Cir. 2021) (explaining the kinds of authoritative sources, such as dictionaries, intermediate state court decisions, treatises, and caselaw interpreting analogous provisions, that a court may use to make an "*Erie* prediction" as to how the state courts will interpret the relevant statute).

[3] As Community rightly observes, (Doc. 22, # 753 n.2), Steele defends the viability of this alleged violation of the RMLA by focusing only on the "reasonable skill, care, and diligence"

7

Remember, Steele alleges Community approved him for the loan modification, but that it never gave him the document to execute thereby prompting Steele's headache in later trying to convince (unsuccessfully) Nationstar and Steele to treat the modification as a valid agreement. (Doc. 1 ¶¶ 37–38, 75–76, #6, 12–13). This straightforward set of allegations—though sparse—raise sufficient details to infer that Community did not exercise reasonable care. Assuming, as the Court must at this stage of the litigation, that the loan modification was approved, all that was left to do was to have both parties sign on the dotted line. And it is reasonably foreseeable that when Community handed off its servicing obligations to Nationstar that an oral approval for a loan modification was not going to cut it for the modification to be honored—Nationstar would have a valid basis to ask for documentation proving that Community had signed off on the agreement. (*See* Doc. 1-2, #53 (requiring a signature from Community to acknowledge its acceptance of the modification)). After all, the

---

prong—seemingly eschewing reliance on the good faith and fair dealing provision. (Doc. 21, #747). But even assuming this claim is not abandoned, the Court agrees with Community that Steele has not alleged sufficient facts to state a claim that Community acted with bad faith. As is recognized in several areas of Ohio law, bad faith (i.e., a lack of good faith) requires proof of more than just the failure to take reasonable care. *See, e.g.*, *Wasserman v. Buckeye Union Cas. Co.*, 290 N.E.2d 837, 840 (Ohio 1972) (insurance); *State v. Napier*, 163 N.E.3d 1114, 1123 (Ohio Ct. App. 2020) (due process violations); *Mohat v. Horvath*, 2013-Ohio-4290, ¶¶ 21, 28 (11th Dist.) (concluding in a statutory immunity analysis that bad faith "connotes conscious wrongdoing" and that it requires more than allegations of even gross negligence); *see generally White v. Standard Oil Co.*, 187 N.E.2d 504, 508 (Ohio Ct. App. 1962) (defining negligence as the failure to exercise reasonable or ordinary care). Although the Court concludes that the failure to provide the modification to Steele in a timely manner plausibly evidences a failure to exercise reasonable care, the lack of other allegations implying the failure to do so was conscious—and therefore done in bad faith—means Steele has failed to state a claim for relief that Community violated its duty of good faith and fair dealing. *Cf. Sharpe v. PHH Mortg. Corp.*, No. 2:11-cv-926, 2012 WL 1809468, at *4, *5 (S.D. Ohio May 17, 2012) (concluding that the Complaint's failure to detail what led to the parties' failure to finalize a permanent loan modification failed to state a bad-faith contract claim against the mortgagee).

8

statute of frauds often poses a problem for the enforcement of oral contracts in judicial proceedings, especially contracts relating to long-term loans—so businesses are understandably leery to accept that a contract modification has occurred just on one party's say-so. Therefore, it was reasonably foreseeable that Community's failure to provide the modification for execution would prevent Steele from having the modification honored by Community's successor.

Similarly, Community allegedly had over five weeks between its final approval of the modification and the change in servicer to send Steele the written instrument—ample time to guarantee both parties could memorialize the new agreement. Community's failure to do so plausibly evinces a lack of diligence, especially considering one would reasonably desire to have a formal agreement executed prior to its effective date—here, June 1, 2022. (Doc. 1-2, #46). Moreover, as just noted, that Community took no such action before relinquishing its loan servicing obligations to Nationstar foreseeably erected obstacles to Steele's ability to have the loan modification recognized. Those details suffice to create a plausible inference that Community fell short of its duty to exercise reasonable care and to act diligently. So the § 1322.45(A) claim survives dismissal.

Community's contrary arguments do not carry the day. Analogizing Steele's Complaint to the complaint at issue in *Vaughn v. EquityExperts.org, LLC*, No. 1:21-cv-291, 2022 WL 3586163, at *5–*6 (S.D. Ohio Aug. 22, 2022), *rep. & recom. Adopted sub nom. By Vaughn v. EquityExperts.org Midwest LLC*, 2022 WL 4538193 (S.D. Ohio Sept. 28, 2022), it contends that Steele failed to allege how Community acted

9

unreasonably. (Doc. 20, #707; Doc. 22, #754–55). And it argues that Steele failed to provide as much detail as the plaintiffs had in two of the cases that Steele cited in his opposition. (Doc. 22, #755–56).

Start with the first argument that Steele failed to allege how Community's actions were unreasonable. As the Court explained above, when the Complaint is construed as a whole and in Steele's favor, *Pegram v. Herdrich*, 530 U.S. 211, 230 & n.10 (2000), it plausibly provides reason to question whether Community acted reasonably and diligently in the given factual context—Community allegedly approved the loan modification and failed to do its part to solemnize that approval within the more than five weeks before the modification's effective date. Given the consequences that naturally flow from failing to execute the relevant written instrument, this specific context gleaned from the Complaint taken as a whole provides a sufficient basis for inferring that Community's conduct was unreasonable.

*Vaughn* does not require a different conclusion. For starters, the portion of *Vaughn* that Community cites involved the Magistrate Judge's discussion of the plaintiff's claim for the breach of a fiduciary duty created by contract—rather than by statute. *Vaughn*, 2022 WL 3586163, at *5. Not only had the plaintiff failed to "provide the relevant [contract] language" showing that the defendant condominium owner's association owed the plaintiff such a fiduciary duty, but the *Vaughn* plaintiff's complaint also supplied insufficient factual *context* to explain what harm had befallen the plaintiff. *Id.* At *5–*6 (concluding that there was insufficient "factual support" for the claim that the failure to "furnish[] … a list of fees in the purported

10

contract" violated a duty arising from the contract). Steele's Complaint in contrast supplies additional (though limited) details that contextualize Community's actions: despite approving Steele for the modification, Community allegedly did not act expeditiously to give Steele concrete proof of that agreement—even though the approaching change in loan servicer created a risk that the new servicer would not honor an unwritten modification. Those details add meat to what would otherwise be barebones allegations. At this stage of the litigation, that tips the scales away from dismissal. So, although the Court is sympathetic to Community's argument that the allegations against it are scant, that does not mean what is present in the Complaint, when taken in the light most favorable to Steele, fails to create a plausible inference that Community violated § 1322.45(A).

What about Community's argument that in other cases in which courts had denied motions to dismiss, the plaintiffs had alleged more factual details? That contention cannot carry the day: rather than setting the floor for the level of factual detail needed in a complaint to survive a motion to dismiss, those cases simply demonstrate that greater detail ensures dismissal is improper. Put another way, that courts have declined to dismiss complaints that have *more* detail says nothing about whether courts must dismiss complaints that offer *less* detail. In light of the analysis above explaining why the Court finds that Steele's Complaint squeaks by Rule 12(b)(6), dismissal of the § 1322.45(A) claim is not warranted at this stage of the litigation—even with Steele's more limited factual allegations as compared to other cases cited in the parties' papers.

## B. Ohio Revised Code § 1322.40(C)

Next turn to Ohio Revised Code § 1322.40(C). Section 1322.40(C) provides that a mortgage loan servicer may not "[e]ngage in conduct that constitutes improper, fraudulent, or dishonest dealings." Because the Complaint contains no allegations remotely attacking Community's actions as deceptive (i.e., fraudulent or dishonest), Steele's Complaint cannot state a claim for relief unless he plausibly alleged that Community violated the proscription against "improper" conduct.

"Improper" is a difficult word to construe. For starters, it does not have a common-law analogue, as was the case with reasonable care in § 1322.45(A). *See supra* Part A & note 3. And Ohio courts have yet to flesh out the full contours of what the category "improper conduct" under this statute includes. *FV 1, Inc. v. Goodspeed*, 974 N.E.2d 664, 676 (Ohio Ct. App. 2012) (noting that "improper" conduct as used in Ohio Revised Code § 1322.07, the citation for the relevant provision before it was transferred to § 1322.40, was not defined requiring reference to a dictionary definition); *Carver v. Disc. Funding Assocs., Inc.*, No. CVH 20040126, 2004 WL 2827229, at *4 (Ohio Ct. C.P. Huron Cnty. June 10, 2004) (describing "improper, fraudulent, or dishonest" as "broad categories" without providing a concrete definition). Resorting to dictionary definitions does not necessarily advance the statutory interpretation inquiry, however. "Improper" is defined as "[i]ncorrect; unsuitable or irregular." *Improper*, Black's Law Dictionary (10th ed. 2014); *Improper*, Webster's II New Riverside University Dictionary (1988) ("Not suited to circumstances or needs."); *accord FV 1, Inc.*, 974 N.E.2d at 676 (quoting a dictionary definition of "improper" to conclude that "improper conduct" is that conduct which is

12

"not in accord with truth, fact, or right procedure" (quoting *Improper*, Merriam Webster Online Dictionary, https://perma.cc/8NP2-2K3X (last visited Dec. 14, 2023))). But rather than supply an answer, that raises a new question: "incorrect," "unsuitable," and "irregular" all imply that one must compare the loan servicer's actions in a given case to some baseline conduct that is fitting for *the given context*. That in turn requires determining the proper baseline to use.

What provides the measure of when behavior becomes "improper"? One place to start is to look at the other behaviors forbidden by the same provision: "fraudulent" and "dishonest" dealings. Under the *noscitur a sociis* canon of construction, "a word is known by the company it keeps." *Dubin v. United States*, 599 U.S. 110, 124 (2023) (citation omitted); *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 52 F.4th 1054, 1068 (9th Cir. 2022) (describing the canon alternatively as "birds of a feather flock together" (citation omitted)). That canon would thus suggest that "improper" adopts a similar meaning to "fraudulent" or "dishonest," which means improper conduct would be those actions that include some form of deception against the borrower. But limiting the definition of "improper" in that fashion is difficult to square with regulations Ohio promulgated in 2016 setting forth a non-exhaustive list of behaviors it considers § 1322.40 violations. *Ruckman v. PHH Mortg. Corp.*, No. 5:21-cv-923, 2022 WL 16575453, at *20 (N.D. Ohio Nov. 1, 2022) (discussing Ohio Admin. Code § 1301:8-7-16). True, several of the listed examples cover behavior that is arguably deceptive. *E.g.*, Ohio Admin. Code § 1301:8-7-16(C) (splitting fees with an unlicensed loan originator); *id.* § 1301:8-7-16(G) (misquoting closing costs); *id.* § 1301:8-7-16(H)

13

(misappropriating loan disbursement checks). But others on the list do not appear to have a nexus to deception. *Id.* § 1301:8-7-16(A) (failing to return original documents); *id.* § 1301:8-7-16(I) (mishandling loan application materials). That suggests that deception is not the touchstone of improper conduct. *Cf. Guth v. Allied Home Mortg. Cap. Corp.*, 2008-Ohio-3386, ¶¶ 36, 41 (12th Dist.) (describing the provision as part of a "remedial statute [that] is designed in part to protect mortgage borrowers from wrongful conduct" and is not simply just a "variant on common law fraud" (cleaned up)).

Perhaps one umbrella that would cover the non-deception-based examples the regulation lists would be to measure "improper" against that conduct which violates a fiduciary duty the loan servicer owes to the borrower. *See FV 1*, 974 N.E.2d at 676 (suggesting that there is a relationship between "improper" and a loan servicer's "fiduciary duty" as a violation of the latter can demonstrate the servicer acted improperly). But using the fiduciary duty of a loan servicer as the yardstick for assessing propriety creates its own issues. One aspect of a fiduciary duty is the requirement that the fiduciary act reasonably or as a prudent person would—the fiduciary's duty of care. *See Vontz v. Miller*, 111 N.E.3d 452, 462 (Ohio Ct. App. 2016) (corporate fiduciary); *Dombey v. Rindsfoos*, 151 N.E.2d 563, 581 (Ohio Ct. App. 1958) (trust fiduciary). But if so, then "improper" under § 1322.40(C) has substantial overlap with the "reasonable care" obligation imposed by § 1322.45(A) discussed above. And that overlap runs counter to the presumption under the *expressio unius* canon of construction that "[w]hen [the drafter] includes particular language in one

14

section of a statute but omits it from a neighbor, we normally understand that different to convey a difference in meaning." *Bittner v. United States*, 598 U.S. 85, 94 (2023).

That leaves the Court in a bit of quandary, without the benefit of additional briefing targeted at this statutory interpretation question, as the analysis above shows that there is no clear legal standard to apply under § 1322.40(C). That said, at this stage of the litigation and in light of the allegations in the Complaint, there is a means to resolve this motion without defining the full scope of what constitutes "improper conduct" under § 1322.40(C). As noted above, the Court finds that the Steele's § 1322.45(A) claim can proceed to discovery—discovery that will cover the exact same conduct that serves as the basis for the § 1322.40(C) claim. That means that regardless whether the § 1322.40(C) claim is dismissed or permitted to proceed, Steele will be permitted to conduct discovery that would equally be relevant to both claims. In addition, if the Court denies Community's motion with respect to Steele's § 1322.40(C) claim, there is no risk of Steele's recovering twice for Community's conduct under the RMLA, as the remedies under § 1322.40 and § 1322.45 are mutually exclusive when they both govern the same conduct.

Considering all of that, the decision whether to dismiss the § 1322.40(C) claim meaningfully matters only if the facts ultimately showed that Community's actions met the standards of reasonable care (i.e., and thus did not violate § 1322.45(A)), but were nonetheless improper conduct (i.e., thus violated § 1322.40(C)). That is because, if "improper" conduct is also "unreasonable" and therefore reflects a lack of reasonable

15

care (either because improper is defined as that which is unreasonable or because unreasonable conduct includes everything that is improper (i.e., "improper" is a sufficient but not necessary showing for "unreasonable" conduct)), then any improper conduct that violates § 1322.40(C) will also violate § 1322.45(A), and Steele will be able to recover in full for that conduct by proceeding solely under § 1322.45(A). And reviewing the Complaint here, the Court cannot envisage a set of facts that Steele would be able to prove based on the allegations he pleads that would result in a determination that Community's actions were reasonable (and thus did not violate § 1322.45(A)) but improper (thereby violating § 1322.40(C)). When construed in Steele's favor, the Complaint reveals that his theory of Community's liability is premised on the notion that its failure to provide written proof of the consummated modification before transferring servicing obligations to Nationstar *unreasonably* and foreseeably risked Steele's being unable to enforce that promise to which he was allegedly entitled. (*See* Doc. 1 ¶ 126, #22 (alleging that Community's "fail[ure] to act with reasonable care and diligence … constitute[d] [a] violation[] of [Ohio Rev. Code § ]1322.40(C))).

Given the interplay between the two claims under the well-pleaded factual allegations in the Complaint, the Court concludes that dismissal of the § 1322.40(C) is unwarranted for the same reasons discussed in the context of Steele's § 1322.45(A) claim. *See supra* Part A. It was unreasonable (and by implication improper as the Complaint appears to be using that term) for Community to have actively approved Steele for a modification but not to have reduced that approval to written form, even

16

though the loan servicers on the horizon would foreseeably be loath to comply with an oral agreement to modify Steele's loan. Though meager, those allegations suffice to state a claim for relief. As noted, the Court may ultimately conclude that the Complaint can proceed (if at all) only under § 1322.45, but for present purposes that simply does not matter.

Community objects by arguing that there are no allegations "that Community made a specific decision to withhold the modification agreement for some improper, fraudulent, or dishonest reason," (Doc. 20, #706), that it "violated industry standards," or that it "made any promises to provide the modification by a certain date … [or] prior to it transferring servicing rights to Nationstar," (Doc. 22, #752).[4] These arguments boil down to the same objection: Community has a viable defense that it did not act improperly. But that Community has a viable defense—and possibly the better narrative—is not a basis for dismissing the Complaint. *Mulkey v. RoundPoint Mortg. Serv. Corp.*, No. 1:21-cv-01058, 2021 WL 5804575, at *4 (N.D.

---

[4] Community also contends there are no allegations that "Community was still the servicer when Plaintiff made the final payment to qualify for the modification." (Doc. 20, #752). The Court is doubtful about the merits of this contention. Steele expressly alleged that "on or about April 25, 2022, Community approved Steele for a permanent loan modification effective June 1, 2022." (Doc. 1 ¶ 37, #6). This allegation suggests that Community was in charge at the time Steele was deemed to have expressly qualified for the modification, which directly rebuts Community's assertion. Admittedly, Community could be (inartfully) suggesting that Steele needed to satisfy other conditions precedent before the modification would be legally effectuated. And to the extent that Community is arguing that not all conditions precedent were met before Nationstar took over the loan, the allegation that Community approved Steele for a permanent loan modification would not directly rebut Community's contention. Even so, the latter interpretation of Community's argument does not mean its motion has merit. The Court cannot assess the veracity of whether or not Steele satisfied any such hypothesized conditions precedent to the permanent loan modification relying solely on the Complaint—the Court would need additional evidence (e.g., the terms of the conditions, Steele's actions consistent or inconsistent with the conditions, the relevant timeline) to do so. As a result, this latter argument is better raised on a summary judgment motion.

17

Ohio Dec. 7, 2021) ("While Defendant denies [] allegations [that it mishandled a debtor's personal information] and states [it] made no false or misleading statements, such defenses [to the RMLA § 1322.40(C) claim] may be raised in a summary judgment motion."). Simply, for the same reasons articulated above, the limited allegations in the Complaint provide just enough factual context to create a plausible inference that Community violated § 1322.40(C).

As a result, like Steele's § 1322.45(A) claim, his § 1322.40(C) claim survives dismissal—albeit by the skin of its teeth.

## CONCLUSION

Altogether, the allegations in Steele's Complaint meet the mark for the Court reasonably to infer that Steele may be able to show that Community ran afoul of the RMLA. Thus, while the allegations against Community are admittedly sparse, Steele's claims against Community survive dismissal. Of course, Community will have an opportunity to marshal and to present evidence rebutting the allegations that it acted improperly, unreasonably, and without diligence, as it contended in its motion to dismiss. But that is for another day. Accordingly, the Court **DENIES** Community Loan Servicing, LLC's Motion to Dismiss (Doc. 20).

**SO ORDERED.**

January 3, 2024
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**